IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

ROBERT JAMES BLACKBURN,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

Defendant.

No. C12-1015

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

*I.*   *INTRODUCTION* ........................................ 2

*II.*   *PROCEDURAL BACKGROUND* ............................ 2

*III.*   *PRINCIPLES OF REVIEW* ................................ 3

*IV.*   *FACTS* ............................................... 5
    *A.*   *Blackburn's Education and Employment Background* .......... 5
    *B.*   *Administrative Hearing Testimony* ...................... 5
        *1.*   *Blackburn's Testimony* ........................ 5
        *2.*   *Vocational Expert's Testimony* ................... 6
    *C.*   *Blackburn's Medical History* ......................... 7

*V.*   *CONCLUSIONS OF LAW* ................................ 12
    *A.*   *ALJ's Disability Determination* ....................... 12
    *B.*   *Objections Raised By Claimant* ....................... 14
        *1.*   *Listing § 12.04* ............................. 15
        *2.*   *Medical Source Opinions* ...................... 19
            *a.*   *Justmann's Opinions* ..................... 19

---

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

   *b.*   *Dr. Gibson's Opinions* . . . . . . . . . . . . . . . . . . . . . 21

   3.   *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . . . 24

**VI.   CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**VII.   ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Robert James Blackburn on June 22, 2012, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Blackburn asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Blackburn requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On March 9, 2010, Blackburn applied for both disability insurance benefits and SSI benefits. On his applications, Blackburn alleged an inability to work since April 1, 2009 due to ADHD, posttraumatic stress disorder, and bipolar disorder. Blackburn's applications were denied on May 24, 2010. On July 26, 2010, his applications were denied on reconsideration. On August 17, 2010, Blackburn requested an administrative hearing before an Administrative Law Judge ("ALJ"). On September 27, 2011, Blackburn appeared via video conference with his attorney before ALJ Eric S. Basse for an administrative hearing. Blackburn and vocational expert Marian Jacobs testified at the hearing. In a decision dated December 9, 2011, the ALJ denied Blackburn's claims. The ALJ determined that Blackburn was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Blackburn appealed the ALJ's decision.

On March 2, 2012, the Appeals Council denied Blackburn's request for review. Consequently, the ALJ's December 9, 2011 decision was adopted as the Commissioner's final decision.

On June 22, 2012, Blackburn filed this action for judicial review. The Commissioner filed an Answer on September 6, 2012. On October 23, 2012, Blackburn filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On December 18, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On December 28, 2012, Blackburn filed a reply brief. On November 5, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'"

*Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Blackburn's Education and Employment Background

Blackburn was born in 1982. He completed the tenth grade, but dropped out of school in the eleventh grade. Blackburn testified that he had no additional vocational training or other schooling after he dropped out of high school.

The record contains a detailed earnings report for Blackburn. The report covers the time period of 1996 to 2011. Blackburn first had earnings in 1999. From 1999 to 2009, Blackburn earned between $87.34 (2005) and $14,497.60 (2007). He has no earnings since 2010.

### B. Administrative Hearing Testimony

#### 1. Blackburn's Testimony

At the administrative hearing, the ALJ asked Blackburn what prevented him from working. Blackburn responded that he has difficulty leaving his residence and being around people. Specifically, Blackburn testified that "I don't like to be around a lot of people. I get annoyed very easy, agitated, and angry."[2] The ALJ inquired further about Blackburn's difficulties:

> Q:  How often do these episodes happen where you don't
>     leave the house?

---

[2] Administrative Record at 36.

| A: | Well, to put it simply, I don't even grocery-shop. My mom does it for me. . . . |
|---|---|
| | My mom has to go grocery shopping for me, because I can't stand like being in Wal-Mart or Eagle or anything like that. I can't be in the store. |
| Q: | What happens, well, what happens -- Well, what would happen if you were in the store? |
| A: | Well, I get the sensation that everybody is staring at me and then I will start sweating and then get agitated and rather than just, like, flee, I get ornery and I start cussing and I yell at people. I just, kind of, want to be left alone. |
| Q: | When was the last time you went to a store? |
| A: | I really can't remember. I can't answer that. |
| Q: | Okay. Do you ever go out to visit friends? |
| A: | At this point, I don't think I have any friends. |
| Q: | Do you ever go to a shopping mall? |
| A: | No. |
| Q: | Do you ever go to the movies? |
| A: | The only thing I go to is my appointments and I am Court-ordered to go, so I have to go. And, even then, sometimes I go in Hillcrest and I walk right out. |
| Q: | How often are you supposed to go to Hillcrest? |
| A: | It depends, about once a month, at least. |
| Q: | So, you go -- Do you have any other doctor appointments besides Hillcrest? |
| A: | No. |
| Q: | Okay. So, basically, when you say the only thing you go to are your doctor appointments, you are telling me the only thing that you go to, is once a month you go to Hillcrest, right? |
| A: | That's basically, it. |

(Administrative Record at 37-38.) When asked what he does all day in his apartment, Blackburn responded that he sleeps or watches television.

### 2.   *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Marian Jacobs with a hypothetical for an individual who:

has no exertional limitations. Is capable of tasks that can be learned in three days or less involving no more than simple work related decisions, with few workplace changes. He should have only brief and superficial interaction with the public and coworkers and only occasional interaction with supervisors.

(Administrative Record at 64.) The vocational expert testified that under such limitations, Blackburn could not perform his past relevant work. The vocational expert further testified that Blackburn could perform the following work: (1) final assembler of optical frames (500 positions in Iowa and 27,000 positions in the nation), (2) laundry folder (450 positions in Iowa and 39,000 positions in the nation), and (3) night stocker (800 positions in Iowa and 92,000 positions in the nation). The ALJ asked a second hypothetical question which was identical to the first hypothetical except that the individual would be absent from work two days per week or more. The vocational expert testified that under such a limitation, Blackburn would be precluded from competitive employment.

## C. Blackburn's Medical History

On August 12, 2008, Blackburn was admitted to Mercy Medical Center in Dubuque, Iowa, for depression with suicidal ideation. Medical notes provided that Blackburn "has a history of bipolar disorder, but he has not had any treatment or medication for about 3 years."[3] The medical notes also indicated that:

about 5 days ago [Blackburn] did take an overdose of 8 pain pills and about 20 Midol. He has been having anger, irritability, racing thoughts and insomnia. He has been having thoughts of throwing his girlfriend out the window. He has been living with her for 3 years. His mood has worsened over the past few months. He is starting to read his friends minds. He says that he is also depressed because his cousin was murdered here in Dubuque about a year ago and he has been having more thoughts of that murder lately. He has been having a lot of restlessness and anxiety.

_____

[3] Administrative Record at 256.

(Administrative Record at 256.) Upon examination, doctors diagnosed Blackburn with bipolar disorder and psychotic depression. His GAF score was assessed at 45 to 50.[4] He was discharged from the hospital on August 14, 2008.

On November 5, 2008, Blackburn met with Jan Lombardi, M.A., LMHC, for a mental health intake evaluation at Hillcrest Family Services in Dubuque. Blackburn reported poor mood and depression for the past six months. Blackburn also stated that he was anxious around people, and avoided being around people. Specifically, Lombardi noted that Blackburn "has been isolating himself, is sleeping up to 12 to 14 hours a day, but continues to feel fatigue."[5] Upon examination, Lombardi diagnosed Blackburn with mood disorder, severe major depressive disorder, and adjustment disorder with depressed mood. His GAF score was assessed at 45. Lombardi recommended individual counseling as treatment.

On November 12, 2008, Blackburn met with Sarah Justmann, ARNP, at Hillcrest for a psychiatric evaluation. Blackburn reported that he was isolating at home, had recurrent thoughts of suicide, and lacked motivation. He stated that "all he wants to do is lie around and watch TV."[6] Upon examination, Justmann diagnosed Blackburn with mood disorder and possible major depressive disorder. Justmann assessed a GAF score of 55.[7] Justmann recommended medication and psychotherapy as treatment.

---

[4] GAF scores in the 41-50 range indicate serious symptoms. *See Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011) (citation omitted).

[5] Administrative Record at 301.

[6] Administrative Record at 294.

[7] GAF scores of 51-60 indicate moderate symptoms. *See Hudson ex rel. Jones v. Barnhart*, 345 F.3d 661, 662 n.2 (8th Cir. 2003) (citing *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Revision 2000)).

In December 2008, Justmann assessed Blackburn with a GAF score in the 61-70 range.[8] By August 2009, Blackburn's symptoms had worsened and Justmann assessed a GAF score in the 41-50 range. Blackburn's GAF scores improved in September and October 2009, to 51-60 and 61-70, respectively. In January 2010, Blackburn's GAF score remained in the 60-71 range. His GAF score worsened in February and early March 2010, to the 51-60 range. In late March 2010, Blackburn's GAF score was in the 41-50 range. However, in April 2010, Justmann assessed Blackburn's GAF score at the 61-70 range.

On May 3, 2010, Blackburn was referred by Disability Determination Services ("DDS") to Keith F. Gibson, Ph.D., for a psychological evaluation. Blackburn told Dr. Gibson that he was applying for disability benefits because "'I have a hard time being around people. Life's been hell for the last couple of years.'"[9] Blackburn further stated that he "believes that he is disabled due to the severity and chronicity of his psychiatric disorders."[10] Upon examination, Dr. Gibson diagnosed Blackburn with intermittent explosive disorder, bipolar disorder, ADHD, alcohol dependence in partial remission, and anti-social personality disorder. Dr. Gibson also opined that Blackburn may suffer from posttraumatic stress disorder and personality change, but further testing was required. Dr. Gibson assessed a GAF score of 45 for Blackburn. Dr. Gibson concluded that:

> [Blackburn] appears to be capable of remembering and understanding simple instructions, procedures, and locations in a work setting. Chronic emotional instability and attention-deficit difficulties significantly impair this individual's capacity to maintain attention, concentration, and pace sufficient for full-time gainful employment. It is in the area of interpersonal

---

[8] GAF scores in the 61-70 range indicate mild symptoms. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) (citation omitted).

[9] Administrative Record at 303.

[10] *Id.*

relationships that this individual appears to be most severely impaired. Expectations of criticism or harm from others combined with volatile unpredictable temper predict extremely problematic interaction with others in a work environment. Judgment is impaired by paranoid trends in his thinking. He retains the cognitive capacity to respond adaptively and flexibly to changes in the work place, especially in solitary work environments, but not so much in work environment[s] which require appropriate interactions with others.

(Administrative Record at 307.)

On May 21, 2010, Dr. Jennifer Ryan, Ph.D., reviewed Blackburn's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Blackburn. On the Psychiatric Review Technique assessment, Dr. Ryan diagnosed Blackburn with ADHD, bipolar disorder, anti-social personality disorder, and alcohol dependence in sustained partial remission. Dr. Ryan determined that Blackburn had the following limitations: moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Ryan determined that Blackburn was moderately limited in his ability to: carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Ryan also found that Blackburn was markedly limited in the ability to interact appropriately with the general public. Dr. Ryan concluded that:

> The preponderance of the evidence contained in the file
> supports the assertion that [Blackburn] is able to carry out
> simple instructions and perform routine, repetitive job tasks in
> work environments with only minimal interpersonal demands.

(Administrative Record at 311.)

In 2010, Blackburn continued to visit Justmann monthly for medication management. In her treatment notes, Justmann continued to assess GAF scores for Blackburn. In May 2010, Blackburn's GAF score was in the 41-50 range. In June 2010, it was in the 61-70 range. In July and October 2010, Blackburn's GAF scores were assessed in the 51-60 range. The last GAF score assessment in the record is from June 2011. Blackburn's GAF score was 43. The treatment notes provide that Blackburn's highest GAF score up to that period of time in 2011 was 50.

On April 7, 2011, at the request of Blackburn's attorney, Justmann filled out a mental RFC questionnaire for Blackburn. Justmann diagnosed Blackburn with bipolar disorder and ADHD. Justmann assessed a GAF score of 48 for Blackburn. Justmann noted that Blackburn had been "tried on multiple medications [and] . . . his response has been variable. He is consistent in coming in for med[ication] changes [and] takes his pills as instructed."[11] Justmann found Blackburn's prognosis to be guarded. Justmann identified Blackburn's symptoms as follows: decreased energy, thoughts of suicide, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, persistent disturbances of mood or affect, emotional withdrawal or isolation, bipolar syndrome, intense and unstable interpersonal relationships and impulsive and damaging behavior, manic syndrome, illogical thinking, easy distractability, and sleep disturbance. Justmann opined that Blackburn was unable to meet competitive standards in: maintaining attention for a two hour segment, maintaining regular attendance and being punctual within customary, usually strict tolerances, sustaining an ordinary routine without special

---

[11] Administrative Record at 332.

supervision, working in coordination or proximity to others without being unduly distracted, making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with normal work stress, understanding and remembering detailed instructions, carrying out detailed instructions, setting realistic goals or making plans independently of others, dealing with stress of semi-skilled and skilled work, interacting appropriately with the general public, and maintaining socially appropriate behavior. Justmann also determined that Blackburn would likely miss more than four days per month due to his impairments or treatment for his impairments. Lastly, Justmann opined that Blackburn would have difficulty working at a regular job on a sustained basis due to homicidal thoughts in the past and his anti-social personality disorder.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Blackburn is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the

> impairment necessarily prevents the claimant from doing any
> other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful
> activity. If so, the claimant is not disabled. Second, the ALJ
> determines whether the claimant has a severe medical
> impairment that has lasted, or is expected to last, at least
> 12 months. Third, the ALJ considers the severity of the
> impairment, specifically whether it meets or equals one of the
> listed impairments. If the ALJ finds a severe impairment that
> meets the duration requirement, and meets or equals a listed
> impairment, then the claimant is disabled. However, the
> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could

perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Blackburn had not engaged in substantial gainful activity since April 1, 2009. At the second step, the ALJ concluded from the medical evidence that Blackburn had the following severe impairments: bipolar affective disorder, ADHD, personality/intermittent explosive disorder, and substance abuse disorder in reported remission. At the third step, the ALJ found that Blackburn did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Blackburn's RFC as follows:

> [Blackburn] has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to unskilled jobs that can be learned in 30 days or less that involve making few if any decisions and that require few changes in the work place. Socially, he is limited to brief, superficial interaction with the public and co-workers, and to occasional interaction with supervisors.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Blackburn was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Blackburn could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Blackburn was not disabled.

## B. Objections Raised By Claimant

Blackburn argues that the ALJ erred in three respects. First, Blackburn argues that the ALJ erred by not finding that he met Listing § 12.04. Second, Blackburn argues that the ALJ failed to properly consider the opinions of both his treating physician and consultative examiner. Lastly, Blackburn argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Listing § 12.04

At step three of the five-step sequential analysis, an ALJ is required to determine whether a claimant's alleged impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant's impairment, in fact, meets one of the impairments in the "Listings," then the ALJ must find that he or she is disabled. Blackburn argues that he is presumptively disabled because he meets or equals Listing § 12.04 for bipolar syndrome. Blackburn maintains that the ALJ's failure to find him disabled based on Listing § 12.04 requires remand for further consideration by the ALJ.

Listing § 12.04 provides in pertinent part:

> 12.04 *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements of C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following: . . .
>     3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
> AND

15

> B. Resulting in at least two of the following:
>     1. Marked restriction of activities of daily living; or
>     2. Marked difficulties in maintaining social functioning; or
>     3. Marked difficulties in maintaining concentration, persistence, or pace; or
>     4. Repeated episodes of decompensation, each of extended duration; . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A)-(B). The burden is on the claimant to show that his or her impairment meets or equals a listing. *Carlson v. Asture*, 604 F.3d 589, 593 (8th Cir. 2010) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)). Furthermore, in order to meet a listing, "'an impairment must meet all of the listing's specified criteria.'" *Id.*; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.").

In considering Listing § 12.04, the ALJ determined that:

> The severity of [Blackburn's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings . . . 12.04[.] . . . In making this finding the undersigned has considered whether the 'paragraph B' criteria are satisfied. To satisfy the 'paragraph B' criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. . . .
>
> In activities of daily living, social functioning, and concentration, persistence and pace, [Blackburn] has moderate restrictions. As for episodes of decompensation, [Blackburn] has experienced no episodes of decompensation, which have been of extended duration.

> Because [Blackburn's] mental impairments do not cause a least
> two 'marked' limitations or one 'marked' limitation and
> 'repeated' episodes of decompensation, each of extended
> duration, the 'paragraph B' criteria are not satisfied.

(Administrative Record at 16.)

Because Blackburn has been diagnosed with bipolar disorder throughout his medical history, he focuses his argument solely on the "paragraph B" criteria.[12] Blackburn maintains that the record demonstrates that the DDS medical reviewer and the DDS consultative examining physician both suggested that he had a "marked" limitation in getting along with the general public and co-workers. Blackburn also points out that he was hospitalized in 2008 and 2011, and attempted suicide on multiple occasions; thereby showing repeated episodes of decompensation. Blackburn concludes that he "clearly met the criteria in paragraph B of listing 12.04, specifically marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and repeated episodes of decompensation."[13]

While Blackburn correctly points to medical evidence in the record indicating that he would likely have severe difficulty interacting with co-workers and/or the public, this fact alone does not support the conclusion that Blackburn "clearly" meets the "paragraph B" criteria of having "marked" difficulties in maintaining social functioning and "marked" difficulties in maintaining concentration, persistence, or pace. No medical sources, classified as "acceptable medical sources" under the regulations, explicitly opined that

---

[12] Blackburn does not address the "paragraph C" criteria in his brief. Therefore, the Court also elects not to address the "paragraph C" criteria in this decision.

[13] Blackburn's Brief (docket number 13) at 10.

Blackburn had such "marked" limitations.[14]  Moreover, the Commissioner correctly points out that:

> [A]s the ALJ noted, the record shows plaintiff was only hospitalized one time for psychiatric care in August 2008, and he was discharged after only two days.  [Blackburn's] treatment records with Ms. Justmann undercut a finding that [Blackburn] required intensive care akin to hospitalization or had lost adaptive functioning. [Blackburn] frequently denied suicidal ideation, and Ms. Justmann never recommended hospitalization due to [his] mental health complaints. Although [Blackburn] alleges he was hospitalized in 2008, was under commitment in 2011, and overdosed on medication six times, there is no evidence that these incidents required intensive treatment for the required length of time.[15] Moreover, five of those alleged overdoses are from [Blackburn's] history and thus not the relevant time period.[16]

Commissioner's Brief (docket number 15) at 19-20.  The Court concludes that Blackburn has failed to meet his burden of showing that he meets all the requirements of the "paragraph B" criteria under Listing § 12.04.  Therefore, having reviewed the entire record, the Court finds that Blackburn has not met his burden to show that he meets Listing § 12.04.  *See Carlson*, 604 F.3d at 593; *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his [or her] impairment matches a listing, it must

---

[14] A treating source, Sarah Justmann, a nurse practitioner, opined that Blackburn had severe impairments, which would imply "marked" limitations in social functioning and concentration, persistence, or pace, but she did not explicitly state that Blackburn had such "marked" limitations.

[15] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4) (providing that repeated episodes of decompensation means 3 episodes within one year, or episodes occurring approximately every 4 months, which last at least 2 weeks).

[16] *See* Administrative Record at 256 (Blackburn's 2008 hospitalization records, indicating that until his hospitalization, Blackburn had not sought treatment for 3 years, and that he had a history of 5 overdoses).

meet *all* of the specified medical criteria."). Accordingly, the Court determines that there is substantial evidence in the record to support the ALJ's finding that Blackburn does not meet the criteria of Listing § 12.04(B). Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Medical Source Opinions

#### a. Justmann's Opinions

Sarah Justmann, a nurse practitioner, is not classified as "acceptable medical sources" under the Social Security Regulations. Even though Justmann is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a nurse practitioner, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the

> severity of the impairment(s) and how it affects the
> individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to

"other medical evidence," an "ALJ has more discretion and is permitted to consider any

inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007,

1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ addressed Justmann's opinions as follows:

> By way of further evaluation, the undersigned notes that under
> the opinion evidence from the treating ARNP provided in a
> mental capacities questionnaire dated April 7, 2011,
> [Blackburn] would have serious to marked limitations in his
> mental functioning resulting in an inability to maintain regular
> work attendance or meet competitive work standards.
> However, the undersigned cannot give that assessment
> controlling weight and consideration based on the record as a
> whole. To begin with, consider the fact that [Blackburn] was
> assessed a higher GAF score in April 2010 at 61-70. Overall
> his mood was stable. in May 2010, he had some elements of
> suicidal ideation with a corresponding drop in his GAF to 41-
> 50 but as of June 2010, it was back up to 61-70. He was
> feeling better and spending more time with his kids. In
> October, 2010, he admitted to no side effects from medication;
> his affect was labile but he maintained a GAF score in the
> moderate range of impairment.

> Comments from the more recent progress notes of the treating
> source, from March to May 2011, indicated that [Blackburn]
> had a confrontation with the grandfather of his kids. He said
> that he was still more interested in having contact with his
> children. He was able to maintain himself, living alone in his
> own apartment. He admitted to feeling better overall. His
> mood was considered to be 'good.' He had a verbal
> altercation with his wife over whether he could go to a
> birthday party of one of his kids and reportedly, she started to
> assault him. He felt that she was trying to get him into
> trouble. Yet, in May 2011, his mood was still good. He had

a flat affect but he was calm, cooperative, interacted well, and was fully oriented.

[Blackburn] had a relapse in June 2011, associated with situational stressors related to legal problems and family issues; the GAF score was down to 43. He was under commitment to the treating mental health center. By September 2011, he was waiting for a court appearance that was previously postponed. However, he admitted that his mood was stable. He was again oriented, calm, cooperative, pleasant, and interacted well.

(Administrative Record at 19.) It is clear from the ALJ's decision that the he determined that the opinions expressed by Justmann in the mental RFC questionnaire for Blackburn were inconsistent with her own treatment notes and the record as a whole.

Having reviewed the entire record, the Court finds that the ALJ properly considered Justmann's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly articulated his reasons for not granting "controlling weight" to Justmann's opinions, and for finding Justmann's opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010; *see also Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a medical source that is not an "acceptable medical source" is the expertise of the source as it relates to the claimant's impairment). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### b. *Dr. Gibson's Opinions*

Blackburn argues that the ALJ failed to properly evaluate the opinions of Dr. Gibson, a consultative examining doctor. Specifically, Blackburn argues that the ALJ failed to articulate any rational reasons for disregarding Dr. Gibson's opinions. Blackburn

asserts that this matter should be remanded for further consideration of Dr. Gibson's opinions.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, an ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of

treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In his decision, the ALJ addressed Dr. Gibson's opinions as follows:

> [Blackburn] had a consultative psychological evaluation at the request of the State agency (DDS) on May 3, 2010. [Blackburn] achieved an adequate score of 24 out of 30 on a mini mental status evaluation. His errors were consistent ADHD and inadequate schooling. The overall assessment was that his emotional instability and ADHD presented a situation that would impair his ability to maintain concentration, persistence and pace in a full time work setting, and that his volatile and unpredictable temper along with his expectations of criticism and harm from others, would be problematic for him while working around others. On the other hand, he was capable of remembering and understanding simple instructions, procedures, and locations in a work setting and he showed the cognitive capacity to respond adaptively and flexibly to changes in the work place, especially in more solitary work environments. Those conclusions are consistent with the residual functional capacity determined in this matter.

(Administrative Record at 18-19.) Additionally, the ALJ determined that:

> [Blackburn's] inability to sustain work may be based on his perceived emotional instability and socialization limitations. However, it seems that his mood is stable when he is living by himself. He is able to complete personal care and household tasks. He does seem to be able to control his explosive anger when he wants to; he appears to be controlled at the times that he keeps his medical appointments. He has denied any fights for a long time and has not presented as notably angry with his treating sources. The vocational expert at the hearing pointed out that his past relevant work involved much social interaction with coworkers. This would have been a likely source of his prior anger/fighting outbursts and it is avoided in the above

23

> residual functional capacity which limits him to brief, social
> interactions with others. He should be able to manage more
> solitary types of work environments with minimal
> interpersonal demands so that he can avoid the exacerbations
> of his irritability and the anger that he has in dealing with
> others.

(Administrative Record at 19.)

Here, the ALJ thoroughly reviewed Blackburn's medical records and fully considered the opinions of treating and consultative sources.[17] Specifically, the ALJ addressed Dr. Gibson's opinions and properly considered Dr. Gibson's opinions in making his RFC assessment for Blackburn. *See Wagner*, 499 F.3d at 848. Moreover, having reviewed the entire record, the Court finds that the ALJ properly considered Blackburn's medical records, observations of treating physicians, and Blackburn's own description of his limitations in making the RFC assessment for Blackburn.[18] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

### 3. *Hypothetical Question*

Blackburn argues that the ALJ's hypothetical question to the vocational expert was insufficient because it did not include "argumentativeness" as one of his impairments. Blackburn asserts that "[b]y only posing defective hypotheticals that did not include the most important facet of [his] impairments, the ALJ committed reversible error."[19]

---

[17] *See* Administrative Record at 17-19.

[18] *See id.* at 16-19.

[19] Blackburn's Brief (docket number 13) at 13.

Blackburn maintains that this matter should be remanded so that the ALJ may ask a proper hypothetical question to the vocational expert.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Blackburn's testimony in determining Blackburn's impairments.[20] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was not insufficient.

## VI. CONCLUSION

The Court finds that the ALJ properly determined that Blackburn does not meet the requirements of "paragraph B" for a finding of disability under Listings § 12.04. The

---

[20] *See* Administrative Record at 16-19.

Court also finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Justmann and Dr. Gibson. Lastly, the ALJ's hypothetical questions to the vocational expert properly included those impairments which were substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

### *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this _9th_ day of April, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA